1  Carolyn H. Cottrell (*pro hac vice*
2  application to be submitted)
   ccottrell@schneiderwallace.com
3  SCHNEIDER WALLACE
   COTTRELL KONECKY LLP
4  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
5  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
6
7  Jake Curtis (SBN 019726)
   jcurtis@bcattorneys.com
8  BURCH & CRACCHIOLO, P.A.
   702 East Osborn Road, Suite 200
9  Phoenix, AZ 85014
   Telephone: (602) 274-7611
10 Facsimile: (602) 850-9760
11
12 Attorneys for Plaintiff
13
14 **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE DISTRICT OF ARIZONA**
15 **TUCSON DIVISION**
16

| | |
|---|---|
| 17  DENNIS MONTOYA, on behalf of himself and all others similarly situated, | Case No. _____ |
| 18 | |
| **Plaintiff**, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| 19 | |
| 20  vs. | **DEMAND FOR JURY TRIAL** |
| 21  3PD, INC., a Georgia corporation, THE HOME DEPOT, INC., a Delaware corporation, and /or THE HOME DEPOT, U.S.A., INC., a Delaware corporation, | |
| 22 | |
| 23 | |
| 24  **Defendants**. | |

25
26
27
28

**INTRODUCTION**

1.     This is a class and collective action lawsuit against 3PD, Inc. ("3PD") and against The Home Depot, Inc. and/or The Home Depot, U.S.A., Inc. ("Home Depot") (collectively, "Defendants") to challenge their policies and practices of unlawfully misclassifying their non-exempt hourly Driver employees ("Drivers") as independent contractors who are exempt from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and state wage laws.  As a result of Defendants' unlawful misclassification policies and practices, Defendants have willfully failed to pay their Driver employees the overtime compensation and wages they are due under the FLSA, 29 U.S.C. § 207.  Further, as a result of their unlawful misclassification policy and practice, Defendants have unlawfully deducted expenses from Drivers wages, willfully failed to pay their Driver employees the federal and state-mandated minimum wage rate in violation of both federal and state laws, and have willfully failed to timely pay all wages, including overtime compensation, to their Driver employees in violation of state wage laws.

2.     Plaintiff Dennis Montoya ("Plaintiff") and the members of the Collectives and the Classes proposed herein are current and former Drivers for 3PD and current and former Drivers for 3PD and Home Depot.

3.     Despite being classified as "independent contractors", Defendants treated Plaintiff and Drivers as employees, effectively barring them from engaging in business with anyone other than Defendants, thereby making them financially dependent on Defendants.  Additionally, Defendants exercised significant control over, among other things, Drivers' hours of work, how Drivers would spend their day, the manner in which they were to perform their job duties, the tools and equipment Drivers were required to use to perform their job duties, quality control, rates of pay and ability to work for any other businesses.  Drivers exercised very limited, if any, discretion in performing their duties.  Defendants compensated Drivers with a set amount fixed by Defendants.  Finally, Drivers performed duties consistent with 3PD's central business, in that they performed deliveries on behalf of Defendants and many of Drivers worked nearly exclusively and

full-time for Defendants for many years.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because these claims raise a question of federal law.

5.      In addition, or in the alternative, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of a different state from each Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this Court because events giving rise to Plaintiff's claims occurred within this judicial district and because each Defendant is subject to personal jurisdiction within this judicial district.

### PARTIES

6.      Plaintiff Dennis Montoya is a resident of the State of Arizona.  Plaintiff was employed as a Driver by 3PD and/or Home Depot from approximately March 2005 until late January 2012. At all relevant times, Defendants misclassified Plaintiff as an exempt independent contractor when he was in fact a non-exempt employee.

7.      Defendant 3PD is a Georgia corporation with its principal place of business in Marietta, Georgia.  During the relevant time period, 3PD was, and still is, regularly engaged in business throughout the United States, including in the State of Arizona.  3PD's primary business consists of providing merchandise delivery services (also known as "last-mile logistics") to Defendant Home Depot and to other retailers.

8.      Defendant The Home Depot, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  According to its corporate website, Home Depot is "the world's largest home improvement specialty retailer with stores in all 50 states, the District of Columbia, Puerto Rico, U.S. Virgin Islands, 10 Canadian provinces, Mexico and China."  According to the "Store Finder" tool on Home Depot's website, it maintains at least 30 home improvement retail stores in the State of Arizona.

9.      Similarly, Defendant The Home Depot, U.S.A, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  According to Arizona's Secretary of State website, The Home Depot, U.S.A., Inc. is a registered corporation in Arizona.  The Home Depot, Inc. holds at least 20% shares or beneficial interest in The Home Depot, U.S.A., Inc.

10.     At all relevant times, Defendant 3PD was Plaintiff's "employer" within the meaning of the FLSA and Arizona law.

11.     At all relevant times, Defendant Home Depot was Plaintiff's "employer" within the meaning of the FLSA and Arizona law.

**FACTUAL ALLEGATIONS**

12.     Throughout the time period March 27, 2010 through the present, 3PD has employed and/or jointly employed with retailers around the country, thousands of Drivers to provide home delivery services to these retailers.

13.     When prospective Drivers apply for a position with 3PD, 3PD requires them to fill out an application, which requests information such as Drivers' employment history, driver's license information, accident history, and personal references.  The application also asks whether Drivers are currently working for another employer and whether they intend to continue working for another employer while working for 3PD.

14.     3PD also requires prospective Drivers to undergo a physical examination and to submit to drug and alcohol testing.  Drivers must agree to continue to submit to drug and alcohol testing throughout their employment.

15.     3PD requires its Drivers to sign lengthy form contracts which mischaracterize each driver as an "independent contractor."  The contracts are designed to conceal the true nature of the relationship between 3PD and its drivers which is that of employer and employee.  3PD requires Drivers to sign these adhesion contracts as a condition of employment as well as to agree to periodic addenda drafted by Defendant which also constitute adhesion contracts.

16.     Although the contracts label Drivers as independent contractors, Defendants exercise significant behavioral and financial control over Drivers to establish that they are in fact

employees.  Specifically, this control includes the following: Drivers are assigned to supervisory personnel who assign, direct and supervise their work; Drivers are required to comply with Defendants' policies, procedures and practices or suffer penalties for not complying; Drivers receive training in Defendants' policies and procedures and in how to prepare and submit required documentation; Drivers are required to purchase or lease uniforms, equipment and vehicles that meets Defendants' specifications and include Defendants' signage on same.

17.      The general responsibility of Drivers is to deliver merchandise to retailers' customers.  This service - delivering merchandise from a retailer to the end-consumer - is known as "last-mile logistics" and is 3PD's primary business.

18.      3PD requires its Drivers to make deliveries for a single 3PD client, such as Home Depot.  Drivers are then assigned to one of the client's stores or to a group of stores.  Plaintiff, for example, generally only made deliveries for Home Depot store No. 416 in Kingman, Arizona. 3PD does not allow Drivers to exchange assignments amongst themselves or to subcontract the delivery to another person or entity without approval from 3PD and Home Depot.

19.      Once Drivers are hired, 3PD requires them to be on-duty and/or on-call for approximately 10 hours per day, six days per week. 3PD has authority over the hours Drivers are required to work per day, the deliveries they are required to make and the order of such deliveries. Drivers are not permitted to perform services for others during these hours.  In light of applicable regulations and 3PD's strict control over Drivers' work hours, Drivers are effectively prohibited from performing any other driving duties.  Thus, 3PD essentially has exclusive rights to Drivers.

20.       3PD does not lease vehicles directly to Drivers.  Rather, 3PD requires Drivers to establish a business entity, and then facilitates the leasing of vehicles through another entity, CURE Leasing and Maintenance ("CURE") to the business entity.  For example, 3PD required Plaintiff to set up a limited liability company, which Plaintiff titled Big Dog Trucking and Material Handling, LLC ("Big Dog Trucking"). 3PD then facilitated the leasing of vehicles to Big Dog Trucking.  Furthermore, 3PD identifies outside firms to assist Drivers in forming business entities.  The vehicle leasing is contingent on Drivers securing employment with 3PD.

21.     If Drivers are in an accident while driving the vehicles, they must report the accident to 3PD's Risk Manager and submit to 3PD's post-accident drug and alcohol testing. 3PD prohibits Drivers from admitting fault or responsibility at the accident scene.

22.     3PD requires that Drivers do everything necessary to pass vehicle inspections and stay up-to-date on vehicle service. For example, 3PD provides its Drivers with updated vehicle registration stickers and license plates. Drivers must go through 3PD to obtain these items. In addition, 3PD requires Drivers to pay vehicle inspection compliance fees.

23.     Additionally, 3PD provides Drivers with necessary equipment to enable them to perform their job duties, including, but not limited to, trailers and forklifts.  3PD dictates the maintenance schedule for its equipment and requires that Drivers use 3PD's chosen service providers to perform the maintenance.  3PD also charges Drivers for any damage to the equipment.

24.     3PD deducts vehicle maintenance charges, vehicle lease charges, administrative charges and other equipment and materials charges as detailed above from its Drivers' pay.

25.     In the event Drivers' lease  vehicles from CURE, Drivers – through their respective business entities – are also required to enter into a maintenance agreement with CURE Leasing and Maintenance LLC ("CURE").  Payments owed to CURE for leasing and maintenance are deducted by 3PD from their weekly pay.

26.     Prior to 3PD's facilitation of CURE's involvement in maintaining Drivers' vehicles, the vehicles were serviced primarily by 3PD.

27.      In addition to the above, 3PD also furnishes its Drivers with additional equipment necessary for their work.  This additional equipment  includes straps, hand trucks and pallet jacks, cellular phones, and other devices.  Drivers lease some of this equipment from 3PD through an "Equipment Lease" form that includes a "Weekly Maintenance Payment."   Although 3PD performs and initially pays for maintenance on leased equipment, 3PD ultimately deducts the costs of such maintenance from Drivers' compensation.  Additionally, in the event a Driver damages or

destroys any of 3PD's equipment, the replacement and/or repair cost is deducted by 3PD from his/her weekly pay.

28.     3PD also requires Drivers to purchase Nex-Tel telephones that are compatible with 3PD's Cube system, used by 3PD and retailers to dictate and track the details of Drivers' work assignments and the movement of Drivers.  3PD deducts the charges associated with the mandated telephones from Drivers' settlements.  In the event the telephones are inoperable, 3PD continues to deduct charges associated with the telephones from Drivers' pay.

29.     With regard to fuel expenses, the bulk of Drivers had to contract with 3PD's fuel service provider, contingent on being employed by 3PD.  Drivers were not permitted to negotiate fuel rates or discounts with 3PD's fuel service provider.  3PD deducted Drivers' fuel expenses from their weekly pay.  Presumably, 3PD benefited from this practice.

30.     3PD reimburses Drivers for some of their fuel charges, but Plaintiff is informed that Drivers are not reimbursed at the proper rate and are not reimbursed for all of the charges.

31.     3PD has the authority to terminate Drivers, including for failing to abide by 3PD's policies and practices.

32.     To monitor its Drivers' job performance, 3PD issues several performance reports, including "Carrier Market Compliance Reports" and "Driver Compliance Reports."

33.     3PD provides its Drivers with uniforms, at Drivers' expense, that they are required to wear while on duty.  3PD's logo is affixed to the uniforms.  Drivers are prohibited from deviating from the required uniform.  Drivers are also prohibited from including the logo of their own business entity on the uniforms.  Drivers are required to purchase replacement uniforms at their own expense from 3PD's website.

34.     3PD pays some of its Drivers a fixed weekly amount determined solely by 3PD, known as a "settlement."  Another method of compensating Drivers is on a pure per-stop basis. The potential also exists for discretionary bonuses based on performance and customer service. Drivers' weekly paychecks are generally deposited by direct deposit into their bank accounts.

However, if a Driver prefers to receive payment by check, he or she is charged a $20 weekly fee, which 3PD deducts from the Driver's weekly paycheck.

35.     3PD tracks Drivers' survey scores through "VOC Reports." Drivers or teams of Drivers who meet the "survey goals" receive bonuses. However, 3PD has repeatedly increased the "survey goals" midstream, thus changing the bonus requirements at a moment's notice. 3PD repeatedly changed Drivers' settlement amounts as well, entirely at 3PD's discretion and without any ability by Drivers to negotiate.

36.     In addition, 3PD issues its Drivers a "DOT Log Compliance Handbook," which describes the U.S. Department of Transportation's requirements for tracking and logging daily work activity. 3PD has the authority to terminate Drivers who do not properly log their time.

37.     If Drivers damage a retailer customer's property while performing "Non-included Installation Services," they must submit an "Installation Damage Claim" to 3PD's Risk Manager.

38.     If Drivers want to use a "relief driver" while they are on vacation or taking time off, 3PD must approve this "relief driver" before he or she actually begins working.  3PD can take months to approve  Drivers' proposed "relief drivers".  In Plaintiff's case, the approval process took up to eighteen months.  Additionally, 3PD has the right to refuse.  Similarly, while Drivers are allowed to hire other drivers or helpers to assist them with their job duties, these workers must be pre-approved by 3PD.  Additionally, 3PD requires these secondary workers to complete background authorization forms and drug testing. In short, Drivers cannot hire workers without 3PD's approval.

39.     Furthermore, Drivers were not able to take vacations or time off without permission from 3PD's schedulers.  Permission to take vacation or time off was not readily given.

40.      Plaintiff is informed and believes that 3PD's policies and practices as documented below are similar with respect to other retailers for whom it provides Drivers.

**FACTUAL ALLEGATIONS SPECIFIC TO DRIVERS EMPLOYED BY 3PD AND BY HOME DEPOT**

41.    From March 6, 2010 through the present, 3PD and Home Depot have jointly employed thousands of Drivers to provide delivery services to Home Depot.

42.    Specifically, 3PD and Home Depot have the authority to hire and fire Drivers, supervised and controlled Drivers' work schedules and conditions of employment; determined Drivers' rate and method of payment and maintained employment and other records for Drivers.

43.    Once Drivers are hired, 3PD and Home Depot require them to be on-duty and/or on-call for approximately 10 hours per day, six days per week. 3PD and Home Depot have complete authority over the hours Drivers are required to work per day, the deliveries they are required to make and the order of such deliveries.  In light of 3PD's and Home Depot's requirement that Drivers be available to work exclusively for them at least ten hours per day, Drivers are effectively denied the opportunity to  perform services for other entities during these hours.  Additionally, 3PD and Home Depot require Drivers to respond to calls within thirty minutes.  Again, this requirement makes it virtually impossible for Drivers to perform services for anyone other than 3PD and Home Depot.

44.    After a customer purchases merchandise, the customer arranges with Home Depot to have the merchandise delivered by Drivers.  A delivery order is then assigned to a particular Driver through Home Depot and through 3PD's "Central Fulfillment" department. Drivers do not have the discretion or ability to reject a delivery order; once the order is assigned, Drivers are generally required to accept it.  In other words, 3PD and Home Depot exercise total control over Drivers' workloads, work assignments and hours of work.

45.    Delivery orders are documented in Home Depot's "Delivery Confirmation" forms. The "Delivery Confirmation" forms require Drivers to make "Curbside Delivery Only," meaning that Home Depot only authorizes its Drivers to deliver merchandise to the curbside of the delivery site. Nevertheless, Home Depot allows (and, in fact, often encourages) customers to ask Drivers to perform services beyond curbside delivery – for example, on-premise or in-house delivery (collectively, "Additional Services") or installation and hook-up of merchandise (collectively, "Non-included Installation Services"). Once the service extends beyond mere curbside delivery,

Home Depot transfers liability for Drivers' services to its customers. In other words, Home Depot expects Drivers to perform Additional Services or Non-included Installation Services for its customers, but refuses to assume liability for these services.

46.     Furthermore, 3PD and Home Depot refuse to pay extra compensation to Drivers for going above and beyond their "curbside delivery" obligation, even though Drivers are expected to do so by 3PD and Home Depot.

47.     In furtherance of its last-mile logistics business with Home Depot, 3PD facilitates the provision of a vehicle or vehicles to Drivers to use throughout their employment .

48.     Drivers must attach 3PD and Home Depot logos to their vehicles. Home Depot and 3PD conduct inspections to make sure that Drivers attach the Home Depot logo and 3PD logos to their vehicles. If the Home Depot logo is not attached, Home Depot imposes monetary fines on Drivers not in compliance. Home Depot and 3PD also mandate that their Drivers spray paint an orange "H" on the back of their haulaways. Despite this requirement, Drivers must purchase their own spray paint, for which they are not reimbursed.

49.     3PD and Home Depot provide their Drivers with identification badges that contain Drivers' picture and the Home Depot logo. Home Depot requires Drivers to undergo background checks before they are issued badges.

50.     The badges contain a list of Home Depot's "basic responsibilities to our Customers," by which Drivers are expected to abide. These basic responsibilities include: "Always put our Customers first;" "Dress and act professionally;" "Arrive on time;" Anticipate Customer needs and respond promptly to questions;" "Respect the Customer's home: keep it clean and safe;" and "Do the right thing every day for every Customer."

51.     Drivers are required to wear the identification badges while they are on-duty. 3PD and Home Depot have threatened to impose significant monetary fines on Drivers  each time they are reported as either obstructing and/or missing their  required badges.

52.     3PD provides its Drivers with uniforms, at Drivers' expense, that they are required to wear while on-duty.  The uniform includes  shirts, sweatshirts, jackets, and  hats.  The uniform

contains 3PD's logo and Home Depot's logo.  Drivers are prohibited from deviating from the required uniform. For example, 3PD and Home Depot do not allow Drivers to include the logo of their own business entity on the uniforms. Drivers are required to purchase replacement uniforms at their own expense from 3PD's website.

53.    3PD and Home Depot also subject their Drivers to performance-based "survey goals." Under these "survey goals" Drivers or teams of Drivers are required to obtain the highest possible customer survey scores.

54.    If Drivers damage a Home Depot customer's property while performing Non-included Installation Services, they must submit an "Installation Damage Claim" to 3PD's Risk Manager.

55.    If Drivers want to use a "relief driver" while they are on vacation or taking time off, 3PD and Home Depot must approve this "relief driver" before he or she actually begins working. 3PD can take months to approve Drivers' proposed "relief drivers".  In Plaintiff's case, the approval process took up to eighteen months.  Additionally, 3PD and Home Depot have the right to refuse.  Similarly, while Drivers are allowed to hire other drivers or helpers to assist them with their job duties, these workers must be pre-approved by 3PD and Home Depot.  Additionally, 3PD and Home Depot require these secondary workers to complete background authorization forms and drug testing before being issued Home Depot badges. In short, Drivers cannot hire workers without 3PD's and Home Depot's approval.

56.    Drivers receive assignments directly from Home Depot's Dispatch Delivery Coordinator.  3PD and Home Depot track and monitor Drivers' movements continuously through their mandated GPS system.  Home Depot's Delivery Coordinators issue complaints if they perceive Drivers as taking too long to complete their deliveries.  In the event that 3PD's and Home Depot's required communication equipment does not function properly so they are unable to track Drivers' movement, Drivers are required to constantly stay in contact with them by other means to provide their whereabouts and arrival and departure times for each delivery.

57.     In addition to Plaintiff's Driver duties outlined above, Home Depot required Plaintiff to perform loading duties in Home Depot's shipping and receiving department and at its Distribution Center, to build loads based on Home Depot orders, to transport goods between stores if a store was short on product, to assemble displays at the County Fairs and to transport goods to and from same.  Plaintiff was not compensated for these additional job duties.

58.     Furthermore, Home Depot required Plaintiff to:

(1) Build loads with Home Depot product based on the orders determined by Home Depot;

(2) Load his vehicle with Home Depot product and arrange the loads appropriately based on the orders and timing of delivery of orders determined by Home Depot;

(3) Deliver Home Depot products according to Home Depot's mandated schedule and within the hours determined by Home Depot, and

(4) Install Home Depot product according to Home Depot specifications.

59.     Home Depot continually monitored Plaintiff's performance and duties.

60.     Plaintiff is informed and believes that 3PD's policies and practices as documented above is similar with respect to its Drivers that perform work for other retailers.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

61.     Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).  The groups of similarly situated individuals that Plaintiff seeks to represent is defined as follows:

All current and former Drivers who were employed by Defendant 3PD  to provide merchandise delivery services  at any time from March 27, 2010 through the present ("the Driver Collective").

All current and former Drivers who were employed by Defendant 3PD and/or Defendant Home Depot to provide merchandise delivery services for Home Depot at any time from March 27, 2010 through the present ("the Home Depot Collective").

62.     Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA

claims are similar to the claims of the members of the Driver Collective and the Home Depot Collective (hereinafter referred to as the "Collectives").

63.     The members of the Collectives are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that misclassifies them as exempt independent contractors, and thus requires them to perform work without compensation in violation of the FLSA.

64.     Plaintiff is representative of the members of the Collectives and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

65.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Collectives.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

66.     The similarly situated members of the Collectives are known to Defendants, are readily identifiable, and may be located through Defendants' records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

67.     Plaintiff seeks to maintain his Arizona state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In particular, Plaintiff seeks to certify the following Rule 23 Classes:

> All current and former Drivers who were employed by Defendant 3PD  to provide merchandise delivery services in the State of Arizona  at any time from March 27, 2010 through the present ("the Driver Class").

> All current and former Drivers who were employed by Defendant 3PD and/or Defendant Home Depot to provide merchandise delivery services for Home Depot in the State of Arizona at any time from March 27, 2010 through the present ("the Home Depot Class").

68.     Plaintiff's Arizona state law claims have been brought and may properly be

maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

69. The potential members of the Classes are believed to exceed 100, and the Class Members are so numerous that joinder of all members is impracticable.

70. Plaintiff seeks to serve as a Class Representative for the above-defined Classes.

71. There are questions of law and fact common to Plaintiff and the Classes that predominate over any questions affecting only individual members of the Classes. Examples of these common questions of law and fact include, without limitation:

    a.     Whether Drivers are or were employed by 3PD;

    b.     Whether Drivers are or were employed by 3PD and/or Home Depot;

    c.     Whether Defendants maintain a common policy and practice of unlawfully misclassifying their Drivers as independent contractors who are exempt from the Arizona Minimum Wage Act;

    d.     Whether Defendants maintain a policy and practice of unlawfully misclassifying their Drivers as independent contractors who are exempt from the Arizona Wage Act;

    e.     Whether Defendants, through their policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from the Arizona Minimum Wage Act, fail to pay Class members the minimum wage they are owed in violation of the Arizona Minimum Wage Act;

    f.     Whether Defendants, through their policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from the Arizona Wage Act, fail to timely pay Class members all of the wages owed to them in violation of the Arizona Wage Act;

    g.     The proper formula for calculating restitution, damages and penalties owed to members of the proposed Classes.

72.     Plaintiff's claims are typical of the claims of the Classes.  Defendants' common course of unlawful conduct as alleged herein has caused Plaintiff and Class members to sustain the same or similar injuries and damages.  Plaintiff's allegations – both legal and factual – are thereby representative of and co-extensive with the claims of the Classes.

73.     Plaintiff does not have any conflicts of interest with the members of the Classes he seeks to represent, and Plaintiff will prosecute this case vigorously on behalf of the proposed Class members.  Plaintiff's Counsel are competent and experienced in litigating wage and hour class actions.  Plaintiff will fairly and adequately represent and protect the interests of the Classes he seeks to represent.

74.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class members is not practicable, and questions of law and fact common to the Classes predominate over any questions affecting only individual Class members.  Each Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policy and practice of misclassifying its Drivers as exempt from prevailing state wage and hour laws.  Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

75.     Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**Failure to Pay Wages, Overtime Compensation and Minimum Wage in Violation of the FLSA, 29 U.S.C. § 207**

76.     Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

77.     As described above, 3PD and Home Depot maintained a class-wide policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from the FLSA's overtime regulations.  In actuality, Plaintiff and members of the Collectives are non-exempt employees who routinely worked in excess of 40 hours in a week, yet who, in violation of

29 U.S.C. § 207, were not paid overtime compensation for hours worked over 40 in a week.  In short, as a result of their unlawful misclassification policy and practice – described in detail above – Defendants have violated the FLSA by failing to pay overtime compensation to Plaintiff and members of the Collectives at an overtime rate of time-and-one-half their regular hourly rate of pay.

78.     Defendants violated the FLSA by knowingly failing to maintain records of all hours worked.

79.     Defendants violated the FLSA by knowingly failing to compensate Plaintiff and members of the Collectives for all hours worked and by knowingly failing to compensate them at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1).

80.     Defendants violated the FLSA by knowingly failing to compensate Plaintiffs and members of the Collectives the federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours worked.

81.     In addition, or in the alternative, Defendants violated 29 U.S.C. § 206 by deducting costs for expenses, tools and equipment from Plaintiff and members of the Collectives' wages so as to cause their wages to at times fall below the federally mandated minimum wage rate.

82.     Defendants were willful in their violation of the FLSA.  Accordingly, Defendants are liable under 29 U.S.C. § 216(b) to Plaintiff and members of the Collectives for liquidated damages in an amount equal to the wages Defendants failed to pay as a result of the foregoing violation of 29 U.S.C. § 207.

83.     Plaintiff and members of the Collectives are entitled to all of the unpaid wages, unpaid overtime compensation, plus an additional equal amount as liquidated damages, court costs, attorneys' fees and expenses they expend in successfully bringing this action to recover their unpaid wages and any other relief deemed appropriate by the Court.

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of the Arizona Minimum Wage Act, A.R.S. §§ 23-362 – 23-364

84.     Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

85.     The foregoing conduct, as alleged, violated the Arizona Minimum Wage Act, A.R.S. §§ 23-362 – 23-364.

86.     At all relevant times, each Defendant has been, and continues to be, an "employer" within the meaning of A.R.S. § 23-362(B).  Plaintiff and members of the Classes are employees within the meaning of A.R.S. § 23-362(A).

87.     At all relevant times, 3PD and Home Depot have  either "employed" or jointly employed Plaintiff and the Classes as defined by A.R.S. § 23-362(D).

88.     Section 23-363(A) of The Arizona Minimum Wage Action, A.R.S. § 23-363(A) provides that "[e]mployers shall pay employees no less than the minimum wage… ."[1]

89.     As a result of Defendants' policy and practice of unlawfully misclassifying Plaintiff and the Classes as independent contractors who are exempt from the requirements of A.R.S. § 23-363(A), Defendants have failed to pay Plaintiff and the Classes the prevailing minimum wage in Arizona in violation of A.R.S. § 23-363(A).

90.     By intentionally misclassifying Plaintiff and the Classes as exempt from Arizona's wage payment laws, Defendants willfully failed and refused to pay Plaintiff and the Classes the prevailing minimum wage in Arizona in violation of A.R.S. § 23-363(A).

91.     In accordance with A.R.S. § 23-364(G), Plaintiff and the Classes are entitled to recover damages in the amount of "the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages," along with any other legal and/or equitable relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Failure to Timely Pay Wages in Violation of the Arizona Wage Act,
A.R.S. §§ 23-351 – 23-353**

---

[1] Plaintiff is informed, believes, and thereon alleges that Arizona's hourly minimum wage was $6.75 from January 1, 2007 through December 31, 2007; $6.90 from January 1, 2008 through December 31, 2008; $7.25 from January 1, 2009 through December 31, 2010; $7.35 from January 1, 2011 through December 31, 2011; $7.65 from January 1, 2012 through December 31, 2012; and $7.80 from January 1, 2013 through the present.

92.     Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

93.     The foregoing conduct, as alleged, violated the Arizona Wage Act, A.R.S. §§ 23-351 – 23-353.

94.     At all relevant times, each Defendant has been, and continues to be, an "employer" within the meaning of A.R.S. § 23-350(3).  Plaintiff and members of the Classes are "employees" within the meaning of A.R.S. § 23-350(2).

95.     "Wages," as defined by A.R.S. § 23-350(6), means "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."

96.      Section 23-351(A) of The Arizona Wage Act, A.R.S. § 23-351(A), provides:

> Each employer in this state shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees.

97.     Section 23-351(C) of The Arizona Wage Act, A.R.S. § 23-351(C), provides, in pertinent part:

> Each employer shall, on each of the regular paydays, pay to the employees all wages due the employees up to such date, except… [o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

98.     Section 23-352 of The Arizona Wage Act, A.R.S. § 23-352, prohibits employers from "withhold[ing] or divert[ing] any portion of an employee's wages," unless certain circumstances apply.

99.     Section 23-353(A) and (B) of The Arizona Wage Act, A.R.S. § 23-353(A) and (B), provide, in pertinent part:

> (A) When an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner.

> (B) When an employee quits the service of an employer he shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred.

100.     As a result of Defendants' policy and practice of unlawfully misclassifying Plaintiff and the Classes as independent contractors who are exempt from the requirements of A.R.S. §§ 23-351 – 23-353, Defendants have failed to timely pay all wages and overtime wages owed to Plaintiff and the Classes in violation of A.R.S. §§ 23-351(C) and 23-252.  For this same reason, Defendants have failed to timely pay all wages and overtime wages owed to Plaintiff and members of the Classes who were discharged from or quit their employment with Defendants during the statutory period in violation of A.R.S. § 23-353(A) and (B).

101.     In addition, or in the alternative, Defendants violated A.R.S. § 23-352 by unlawfully deducting costs for expenses, tools and equipment from Plaintiff's and the Classes' wages.  Such deductions also caused their wages to at times fall below the Arizona mandated minimum wage rate.

102.     By intentionally misclassifying Plaintiff and the Classes as exempt from Arizona's wage payment laws, Defendants willfully failed and refused to timely pay all wages and overtime compensation due to Plaintiff and the Classes in violation of A.R.S. §§ 23-351 - 23-353.

103.      As a result of Defendants' unlawful acts, Plaintiff and the Classes are entitled to the statutory remedies provided by A.R.S. § 23-355(A).

### FOURTH CAUSE OF ACTION
### Unjust Enrichment in Violation of Arizona State Law

104.     Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

105.     The allegations of this Fourth Cause of Action are made to the extent and/or in the event the Court finds that Plaintiff has failed to otherwise state a valid claim for relief.

106.     Through their employment with Defendants, Plaintiff and the Classes conferred on Defendants the benefit of their services.

107.     At all relevant times hereto, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing uncompensated work from Plaintiff and Class members.  In particular, Defendants have systematically misclassified Plaintiff and the

Classes as exempt independent contractors in order to appreciate the benefit of Plaintiff's and the Class' services without paying Plaintiff and the Classes for the full value of these services.

108.    By reason of having secured the work and efforts of Plaintiff and Class members without compensation, Defendants enjoyed reduced overhead and operation costs, and therefore realized additional earnings and profits to their own benefit and to the detriment of Plaintiff and Class members.

109.    Defendants retained and continued to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

110.    Therefore, Defendants' acceptance of this benefit without paying Plaintiff and the Classes for the full value of their services is inequitable under the circumstances detailed herein.

111.    Plaintiff and the Classes are entitled to recover the reasonable value of their services, including all wages owed, and all other damages arising out Defendants' failure to pay Plaintiff and the Classes for the full value of their services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

a.  Enter a declaratory judgment that Defendants violated Plaintiff's, the Collectives' and the Classes' rights under the FLSA and Arizona's state wage laws;

b.  Enjoin Defendants to comply with all applicable federal and state wage laws;

c.  Award to Plaintiff and Collective and Class members their respective unpaid wages, including overtime wages plus liquidated damages or treble damages, in accordance with the FLSA and Arizona state wage laws;

d.  Award damages corresponding to the reasonable value of the services rendered by Plaintiff and Collective and Class members to Defendants, whereby Defendants were unjustly enriched;

e.  Award to Plaintiff his costs and attorneys' fees incurred in this action, as provided by 29 U.S.C. § 216(b) and state law ; and

f.   Grant such other and further relief as the court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable.

1

Date: March 27, 2013                          Respectfully Submitted,

2
                                               /s/ *Jake Curtis*
                                              Jake Curtis (SBN 019726)
3                                             BURCH & CRACCHIOLO, P.A.
                                              702 E. Osborn Road, Suite 200
4                                             Phoenix, Arizona  85014
                                              Telephone: (602) 274-7611
5                                             Facsimile: (602) 234-0341
                                              jcurtis@bcattorneys.com
6

7                                             Carolyn H. Cottrell (*pro hac vice* application to
                                              be submitted)
8                                             SCHNEIDER WALLACE
                                              COTTRELL KONECKY LLP
9                                             180 Montgomery Street, Suite 2000
                                              San Francisco, California  94104
10                                            Telephone: (415) 421-7100
                                              Facsimile: (415) 421-7105
11                                            ccottrell@schneiderwallace.com

12
                                              *Attorneys for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28