1   DONNA M. MEZIAS (admitted *pro hac vice*)
    LIZ K. BERTKO (admitted *pro hac vice*)
2   AKIN GUMP STRAUSS HAUER & FELD LLP
    580 California Street, Suite 1500
3   San Francisco, CA 94104
    Telephone:415-765-9500
4   Facsimile: 415-765-9501
    dmezias@akingump.com
5   lbertko@akingump.com

6   JULIET E. GRAY (admitted *pro hac vice*)
    AKIN GUMP STRAUSS HAUER & FELD LLP
7   1333 New Hampshire Avenue, N.W.
    Washington, DC 20036-1564
8   Telephone:202-887-4000
    Facsimile: 202-887-4288
9   jegray@akingump.com

10  Tricia Schafer (018748)
    FALBE LAW PLLC
11  Biltmore Office
    3117 E. Hazelwood Street
12  Phoenix, Arizona 85016
    Telephone: (480) 331-5706
13  triciaschafer@falbelaw.com
    Attorneys for defendants Home Depot, Inc.
14  and Home Depot U.S.A., Inc.

15              **UNITED STATES DISTRICT COURT**

16                  **DISTRICT OF ARIZONA**

17

| | |
|---|---|
| Dennis Montoya, on behalf of himself and all others similarly situated, | Case No. 3:13-cv-08068-PCT-SMM |
| Plaintiff, | DEFENDANT HOME DEPOT U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT |
| v. | **[ORAL ARGUMENT REQUESTED]** |
| 3PD, Inc., a Georgia corporation; The Home Depot, Inc., a Delaware corporation; and/or The Home Depot U.S.A., INC., a Delaware corporation, | |
| Defendants. | |

1

2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL BACKGROUND .................................................. 2

       A.     3PD Is An Independent Service Provider For Home Depot. ..................... 2

       B.     Big Dog Trucking Contracted With 3PD To Provide Delivery Services. .... 3

       C.     Home Depot Did Not Hire, Train, Evaluate, Or Compensate Plaintiff. ..... 3

       D.     Home Depot Did Not Manage Or Supervise Plaintiff. ............................. 5

       E.     Home Depot Did Not Provide Plaintiff's Equipment Or Transportation.... 6

       F.     For Customer Safety Reasons, Home Depot Requires Its Delivery Agents
              To Pass Background Checks. ...................................................... 6

       G.     The Claims In This Action. ...................................................... 7

III.   ARGUMENT ................................................................. 7

       A.     Home Depot Is Entitled To Judgment As A Matter Of Law...................... 7

       B.     Home Depot Was Not Plaintiff's Employer. ............................... 8

              1.     Home Depot did not have the power to hire or fire plaintiff. .......... 8

              2.     Home Depot did not supervise plaintiff or control his schedule or
                     other employment conditions. ........................................... 9

              3.     Home Depot did not decide the rate or method of plaintiff's pay.. 13

              4.     Home Depot did not maintain personnel records for plaintiff. ....... 13

              5.     The additional factors considered under the economic reality test
                     do not support a finding of joint employment................................ 14

       C.     All of Plaintiff's Claims Against Home Depot Necessarily Fail. ............. 15

IV.    CONCLUSION ................................................................. 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. US Airways, Inc.,*
No. CIV 10-1088-PHX-DKD, 2013 WL 1345509 (D. Ariz. Mar. 29,2013) ................
.................................................................................................. 9, 12, 13, 14

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................... 7

*Artis v. Asberry,*
No. G–10–3232012 ...................................................... 11, 12

*Bonnette v. California Health & Welfare Agency,*
704 F.2d 1465 (9th Cir. 1983) .................................... 8, 14

*Diaz v. U.S. Century Bank,*
No. 12-21224-CIV, 2013 WL 2046548 (S.D. Fla. May 14, 2013) ............................ 12

*Evans v. McDonald's Corp.,*
936 F.2d 1087 (10th Cir. 1991) .................................. 10

*First Nat'l Bank v. Cities Servs. Co.,*
391 U.S. 253 (1968)........................................................ 7

*Gonzales v. Sterling Builders, Inc.,*
No. 08-CV-943-BR, 2010 WL 1875620 (D. Or. May 6, 2010) ................................ 11

*Herman v. Mid-Atlantic Installation Servs., Inc.,*
164 F. Supp. 2d 667 (D. Md. 2000).......................... 13

*Layton v. DHL Express (USA), Inc.,*
686 F.3d 1172 (11th Cir. 2012) ...................................... 1, 12, 13

*McGonigal v. Fullwood,*
No. 1 CA-CV 09-0219, 2010 WL 1779350 (Ariz. Ct. App. May 4, 2010)................... 8

*Moreau v. Air France,*
356 F.3d 942 (9th Cir. 2004) .......................................... 11, 13, 14, 15

*Morrison v. Magic Carpet Aviation,*
383 F.3d 1253 (11th Cir. 2004) .................................. 14

*Nevada Employees' Ass'n v. Bryan,*
916 F.2d 1384 (9th Cir. 1990) .................................. 15

ii

*Osuna v. Wal-Mart Stores, Inc.*,
   No. C20014319, 2004 WL 3255430 (Ariz. Super. Ct. Dec. 23, 2004) ...................... 15

*Rios v. Airborne Express Inc.*,
   No. C-05-2092 VRW, 2006 WL 2067847 (N.D. Cal. July 24, 2006).................. 9, 10

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947).............................................................................................. 14

*Torres-Lopez v. May*,
   111 F.3d 633 (9th Cir. 1997) ............................................................................ 8, 14

*Valdez v. Cox Commc'ns Las Vegas, Inc.*,
   No. 2:09-CV-01797-PMP-RJJ, 2012 WL 1203726 (D. Nev. Apr. 11, 2012)..... 8, 9, 12

*Zhao v. Bebe Stores, Inc.*,
   247 F.Supp.2d 1154 (C.D. Cal. 2003) ....................................................... 10, 14, 15

**STATUTES**

29 U.S.C. § 207(a)(1) (2012) ...................................................................................... 15

29 U.S.C. § 213(a) (2012) ........................................................................................... 15

Ariz. Rev. Stat. §§ 23-351, 23-352, 23-353, 23-362, 23-363 and 23-364 ......................... 8

Ariz. Rev. Stat. § 23-362 (2007) .................................................................................. 8

Ariz. Rev. Stat. §§ 23-362 - 23-364 ............................................................................ 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a).................................................................................................... 7

DEFENDANT HOME DEPOT U.S.A., INC'S MOTION FOR SUMMARY JUDGMENT

**MOTION FOR SUMMARY JUDGMENT**

Defendants Home Depot U.S.A., Inc. and Home Depot, Inc. ("Home Depot") hereby move for summary judgment in their favor on the ground that there are no genuine issues of material fact regarding plaintiff's claims against Home Depot. Specifically, because Home Depot was not his employer, plaintiff's claims against Home Depot fail as a matter of law.

This motion is based on the accompanying Memorandum, the LRCiv 56.1(a) Statement of Facts ("SUF"), the Declarations of Kevin Burnett, Kent Ferris, and Donna M. Mezias, and all exhibits thereto, and the pleadings and papers on file herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    <u>INTRODUCTION</u>

Plaintiff Dennis Montoya is the owner and independent contractor of Big Dog Trucking, a federally licensed motor carrier that contracted with 3PD, Inc. ("3PD") to provide delivery services for 3PD customers, including Home Depot, in northern Arizona.  Plaintiff alleges that 3PD misclassified him as an independent contractor in violation of the Fair Labor Standards Act ("FLSA") and Arizona law.

Despite the fact that he was several steps removed from Home Depot, operated independently, and controlled his own hours and work, plaintiff attempts to implicate Home Depot in this wage and hour litigation, claiming that Home Depot was his "joint employer" with 3PD, and thus is liable for allegedly unpaid wages and overtime pay. The undisputed evidence shows that Home Depot did not "employ" plaintiff.  Home Depot did not hire, fire, supervise, discipline, manage, evaluate, or pay wages to plaintiff.  Absent such indicia of employment, Home Depot cannot be held liable on any of plaintiff's claims.  *See, e.g.*, *Layton v. DHL Express (USA), Inc.,* 686 F.3d 1172, 1178-79 (11th Cir. 2012) (DHL was not joint employer of contracted drivers notwithstanding that DHL mandated start times, observed and criticized drivers' truck loading, inspected drivers' vehicles and uniforms, and communicated with drivers

throughout the day regarding deliveries).  This Court should grant summary judgment in favor of Home Depot on all of plaintiff's claims.

II.    FACTUAL BACKGROUND

A.    3PD Is An Independent Service Provider For Home Depot.

Home Depot is the largest home improvement retailer in the United States.  For customers who purchase bulk orders or heavy items, Home Depot offers delivery to customer homes or work sites.  Home Depot utilizes 10 independent delivery service companies to provide deliveries to customers.  *See* Statement of Undisputed Material Facts "SUF") ¶ 1.  These delivery companies enter into written contracts with Home Depot, the terms of which are independently negotiated between the delivery service provider and Home Depot.  SUF ¶ 2.

3PD is an independent delivery services company that has provided services to Home Depot for several years.  SUF ¶ 1; *see also* Declaration of Kent Ferris ("Ferris Decl.") ¶¶ 4, 7.[1]  3PD is the one of the largest providers of "last mile" customer delivery services in the United States.  SUF ¶ 3.   3PD provides delivery services to various clients, including competitors of Home Depot.  SUF ¶ 3.  3PD contracts with professional, federally licensed drivers (generally as independent contractors) to provide delivery services for its clients.  Ferris Decl. ¶ 6.  3PD is a fully independent business entity, with its own management, human resources and administrative personnel, and maintains its own offices in various locations across the country.  SUF ¶¶ 1, 4, 5; *see also* Ferris Decl. ¶ 9.

The written service agreement between 3PD and Home Depot ("3PD Contract") makes clear that 3PD's employees and drivers are not Home Depot employees; that 3PD alone hires, terminates, supervises, and compensates its drivers; and that 3PD is responsible for complying with all labor laws respecting its drivers:

12.  "[3PD] agrees to exclusively exercise day to day control over and supervision

---

[1] The declarations of Kent Ferris, Kevin Burnett and Donna Mezias are attached to the Statement of Undisputed Material Facts.

of [3PD's] employees and subhaulers, including but not limited to ***hiring, discipline, discharge or cancellation*** of [3PD's] employees and subhaulers, ***establishment of the terms and conditions of employment*** or of any collective bargaining agreement of [3PD's] employees and subhaulers and ***to make any payment, award, incentive or other compensation*** of any kind to [3PD's] employees and subhaulers.  All ***work assignments, instructions, scheduling, staffing, staffing and direction*** of [3PD's] employees and subhaulers shall be exclusively performed by [3PD].  [3PD] assumes the responsibility for any and all labor/employment relation matters and of paying employee taxes, Worker's Compensation premiums, social security contributions and other legal obligations…."

"The parties intend that nothing herein shall be construed or interpreted to indicate that The Home Depot is in any way the employer, jointly or solely, of [3PD's] employees and subhaulers."

SUF ¶ 6.

### B.   Big Dog Trucking Contracted With 3PD To Provide Delivery Services.

Plaintiff Dennis Montoya worked as a 3PD driver from March 2005 until January 2012, providing delivery services for Home Depot.  SUF ¶¶ 7, 8.  In 2006, plaintiff, as the sole owner, formed Big Dog Trucking & Material Handling, LLC ("BDT"), a federally licensed limited liability company, to provide delivery services for 3PD.  SUF ¶ 9.  From 2006 until his relationship with 3PD ended in January 2012, plaintiff performed delivery services for 3PD as an independent contractor for BDT.  SUF ¶ 10.  Thus, for the entire period relevant to this action, plaintiff worked for BDT, BDT contracted with 3PD, and 3PD contracted with Home Depot.  SUF ¶¶ 6, 9, 10, 12.  BDT also engaged other drivers as independent contractors to provide appliance and other delivery services for 3PD.  SUF ¶ 11.  During the period plaintiff performed deliveries for Home Depot, he provided deliveries to other businesses as well.  SUF ¶ 8.

Pursuant to its contract with 3PD, BDT had the exclusive authority to control the hours, work conditions, and work performance of plaintiff and BDT's other drivers:

"[Big Dog Trucking] shall be responsible for exercising independent discretion and judgment to achieve [its] business objectives . . . and no officer, agent, or employee of 3PD shall have the authority to direct [Big Dog Trucking] as to the manner or means employed to achieve such objectives and results.  For example, no officer, agent or employee of 3PD shall have the authority to prescribe hours of work, whether or when [Big Dog Trucking] is to take breaks, what route [Big Dog Trucking] is to follow, or other details of performance."  SUF ¶ 12.

### C.   Home Depot Did Not Hire, Train, Evaluate, Or Compensate Plaintiff.

Home Depot does not interview or hire 3PD delivery drivers.  SUF ¶ 14.  When

3

plaintiff applied to 3PD, he did not interview with anyone at Home Depot and Home Depot did not review his application.  SUF ¶ 15.  He was interviewed by the operations manager of 3PD, and the decision to engage him as a driver was made by 3PD.  SUF ¶ 16.

Plaintiff was trained by a 3PD trainer, including several days of training on how to make deliveries, operate a forklift, communicate with Home Depot customers and employees, and complete necessary paperwork.  SUF ¶ 17.  The only direction provided by Home Depot to plaintiff was where he should park his truck and pick up paperwork and products.  Deposition of Dennis Montoya dated November 26, 2013 ("Montoya Tr."), Exh. A to Declaration of Donna M. Mezias ("Mezias Decl."), at 72:15-78:19; 79:10-83:3; 65:10-15.  The 3PD trainer and operations manager accompanied plaintiff on his routes during his first week or two on the job to provide additional training. Montoya Tr. at 79:22-80:18.  Plaintiff did not receive a Home Depot employee handbook.[2]  SUF ¶ 32.

Home Depot did not pay plaintiff or determine his wage rates or how he was paid.  SUF ¶¶ 18, 19.  Home Depot paid 3PD for delivery services performed by 3PD drivers in accordance with the contractual rates in the 3PD Contract.  SUF ¶ 20.  3PD in turn paid BDT for delivery services performed by plaintiff.  SUF ¶ 21.  After paying business expenses, including fuel and compensation owed to other BDT drivers, the remaining amounts earned by BDT were retained by plaintiff.  Montoya Tr. at 135:6-19; 117:15-25; 139:24-142:7; 197:10-198:22 & Exh. 1, Schedule A.

Home Depot did not pay payroll taxes or issue IRS reporting forms for plaintiff. SUF ¶ 22.  3PD issued IRS reporting forms to plaintiff.  Montoya Tr. 102:20-23.  Home Depot did not provide employee benefits or workers' compensation insurance for plaintiff.  SUF ¶ 23.

Home Depot did not evaluate the work performance of plaintiff or other 3PD

---

[2] Plaintiff testified that he received a pamphlet from Home Depot regarding installation of gas appliances.  Montoya Tr. at 147:8-20.  However, he admitted he never used this pamphlet and never performed any appliance installations for Home Depot.  *Id.*

1   drivers and has no authority to make disciplinary decisions respecting 3PD drivers.

2   SUF ¶¶ 24, 25.  BDT's contract with 3PD could be terminated only by 3PD or BDT.

3   SUF ¶ 26.  The decision to terminate BDT's contract with 3PD in January 2012 was

4   made by 3PD, not Home Depot.  SUF ¶ 27.

5        D.        Home Depot Did Not Manage Or Supervise Plaintiff.

6        Home Depot does not manage or supervise 3PD drivers.  SUF ¶¶ 28-31, 35, 37,

7   38.  3PD, not Home Depot, determines the work hours and schedules with its drivers.

8   SUF ¶ 29, 30, 35.  When a Home Depot customer requests merchandise delivery, the

9   customer's name, address, preferred delivery date, preference, if any, for morning or

10  afternoon delivery, and any special customer instructions are inputted into the delivery

11  order system, Delivery TRACS.  SUF ¶ 33.  For stores where deliveries are to be

12  performed by 3PD, delivery orders are automatically communicated to 3PD.  SUF ¶ 34.

13  The order of deliveries for a particular day is determined by 3PD and/or the driver(s),

14  subject to the customer's scheduling preference.  SUF ¶ 35.  Home Depot is not

15  authorized to provide direction to the 3PD driver aside from communicating customer

16  requests.  SUF ¶ 37.

17       3PD drivers view delivery information through an application on handheld

18  devices provided by 3PD.  SUF ¶ 39.  Drivers enter start and stop times for each

19  delivery on the devices; that information automatically updates Delivery TRACS so that

20  3PD and Home Depot have access to real-time information.[3]  SUF ¶ 39; *see also*

21  Declaration of Kevin Burnett ("Burnett Decl.") ¶ 15.

22       When making deliveries, plaintiff had discretion to determine what routes to

23  take, the order of deliveries, and how to make deliveries, and could decide not to

24  perform a particular delivery if road or property conditions were unsafe.  SUF ¶ 36; *see*

25  *also* Montoya Tr. at 46:8-48:4.  Plaintiff asserts that Home Depot occasionally asked

26  him to perform certain services he believed were outside of the scope of his contract

27

28  ─────────────────────
    [3] While a Home Depot employee may call a driver to check on the status of deliveries,
    the purpose of such a call is to answer inquiries or update customers about the progress
    of deliveries, not to provide direction or instruction to the driver.  Burnett Decl. ¶ 15.

with 3PD, but concedes he had the authority to decline to perform such services. Montoya Tr. at 35:17-22; 36:5-12; 41:14-19; 18:18-19:10.

E.    Home Depot Did Not Provide Plaintiff's Equipment Or Transportation.

While performing deliveries, 3PD drivers wear uniforms consisting of khaki shorts and a button up shirt.  SUF ¶ 40.  Home Depot requires only that 3PD driver shirts contain the Home Depot logo and 3PD logo and that drivers wear a badge identifying them to customers as an "authorized contractor driver."  SUF ¶ 43.  Home Depot did not otherwise prescribe what plaintiff should wear and did not provide plaintiff's uniform.  SUF ¶ 43.  3PD supplied the shirts, including the Home Depot and 3PD logo patches, and plaintiff supplied his own pants.  SUF ¶ 44.  Drivers do not wear the trademark Home Depot orange apron or any item identifying them as Home Depot employees.  SUF ¶ 45.

Home Depot did not provide plaintiff with the trucks, forklift, trailer, or handheld device that he used in performing his duties as a 3PD driver.  SUF ¶¶ 46-48; *see also* Burnett Decl. ¶ 18.  BDT leased the trucks that plaintiff and his sub-contractors used. SUF ¶ 48.  3PD sub-leased trailers and forklifts to BDT, and supplied BDT with the handheld device that plaintiff used in performing deliveries for Home Depot.  SUF ¶¶ 47, 48.

F.    For Customer Safety Reasons, Home Depot Requires Its Delivery Agents To Pass Background Checks.

To ensure the personal safety and property of customers, Home Depot requires 3PD to ensure that all drivers who perform deliveries for Home Depot have passed a criminal background check, conducted by a third-party provider.  SUF ¶ 49.  3PD must also ensure that its drivers meet U.S. Department of Transportation ("DOT") regulatory requirements for licensed motor carriers – e.g., drivers must possess a Class A drivers license and pass a physical exam and a drug/alcohol test.  SUF ¶¶ 49, 51.

Home Depot does not conduct or review the results of the background checks and does not itself verify driver compliance with DOT regulations.  SUF ¶ 50.  3PD submits driver names directly to the third-party provider that conducts the background

6

1   checks.  Burnett Decl. ¶¶ 5, 6.  Drivers who clear the check are issued "authorized

2   contractor driver" badges, indicating they are cleared to perform deliveries for Home

3   Depot.  SUF ¶ 52.  Drivers who have been convicted of certain crimes, and thus present

4   a potential risk to the safety or property of Home Depot customers, or who do not meet

5   DOT requirements are not approved as delivery drivers for Home Depot.  Burnett Decl.

6   ¶¶ 5, 6.  However, if a driver does not clear the background check, 3PD remains free to

7   engage the person in some other capacity.  SUF ¶ 53.

8        G.    The Claims In This Action.

9        Plaintiff filed this action in March 2013 against 3PD and Home Depot.  Plaintiff

10  alleges that he was misclassified as an independent contractor by 3PD and was jointly

11  employed by 3PD and Home Depot.  He seeks relief under the FLSA and Arizona law

12  for failure to pay overtime and minimum wages, unlawful wage deductions, failure to

13  pay wages on time, and unjust enrichment.  First Amended Complaint (DE 33), ¶¶ 78-

14  123.  Plaintiff seeks to certify a collective action under the FLSA on behalf of all current

15  and former drivers who provided merchandise delivery services for 3PD and/or Home

16  Depot since March 27, 2010.  *Id.* ¶ 62.  He also seeks to certify a Rule 23 class on

17  behalf of all current and former drivers in the state of Arizona who provided delivery

18  services for 3PD and/or Home Depot since March 27, 2010.  *Id.* ¶ 69.

19  III.   ARGUMENT

20        A.    Home Depot Is Entitled To Judgment As A Matter Of Law.

21        Summary judgment should be granted where the record reveals that there are no

22  genuine issues of material fact and the moving party is entitled to judgment as a matter

23  of law.  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute

24  between the parties will not defeat an otherwise properly supported motion for summary

25  judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*

26  *v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  The party opposing summary

27  judgment cannot "rest upon the mere allegations or denial of his pleadings, but … must

28  set forth specific facts showing that there is a genuine issue for trial."  477 U.S. at 248

(citing *First Nat'l Bank v. Cities Servs. Co.*, 391 U.S. 253, 288 (1968)).  Whether an

7

entity is a joint employer under the FLSA is a question of law.  *See Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (citations omitted).

>  B.  Home Depot Was Not Plaintiff's Employer.

Plaintiff's claims against Home Depot are all premised on the allegation that Home Depot was the joint employer of 3PD contractors making deliveries for Home Depot.  There is no basis for such a finding under either the FLSA or Arizona law.

To determine whether an entity is a joint employer under the FLSA, courts apply the "economic reality test."  *See Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1468-70 (9th Cir. 1983).  The same analysis applies to plaintiff's state law claims.  Under Arizona Revised Statutes §§ 23-351, 23-352, 23-353, 23-362, 23-363 and 23-364, the term "employ" is defined in the same fashion as under the FLSA.  *See* Ariz. Rev. Stat. § 23-362 (2007); *McGonigal v. Fullwood*, No. 1 CA-CV 09-0219, 2010 WL 1779350, at *3-4 (Ariz. Ct. App. May 4, 2010) (employment relationship depends on level of control exercised by alleged employer).  The economic reality test focuses on four primary factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or [other] conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Bonnette, supra,* at 1470 (internal citation omitted). None of these factors are present here.

>  1.  Home Depot did not have the power to hire or fire plaintiff.

Home Depot did not hire plaintiff or other 3PD delivery drivers and had no authority to do so.  SUF ¶¶ 6, 14, 16.  It did not review plaintiff's application or qualifications and did not interview him.  SUF ¶ 15.  Rather, 3PD alone interviewed plaintiff, determined whether he was qualified to be a 3PD driver, and decided to contract with him for delivery services.  SUF ¶ 16.  That plaintiff was required to pass a criminal background check and meet DOT motor carrier requirements in order to make deliveries to Home Depot customers is immaterial.  *See Valdez v. Cox Commc'ns Las Vegas, Inc.,* No. 2:09-CV-01797-PMP-RJJ, 2012 WL 1203726, at *2, *6 (D. Nev. Apr. 11, 2012) (requiring that workers pass background test, drug test and proficiency test

8

1   did not create joint employment).  3PD is free to engage drivers who do not meet these

2   requirements; it simply cannot use them to make deliveries for Home Depot.  SUF ¶ 53.

3          In addition, Home Depot had no authority to terminate plaintiff or other drivers.

4   SUF ¶ 6, 26; *see also* Burnett Decl. ¶ 9.  Plaintiff claims that his contract with 3PD was

5   terminated based on Home Depot complaints about him, but he admits that the ultimate

6   decision to terminate his contract was made by 3PD.  SUF ¶ 27; *see Adams v. US*

7   *Airways, Inc.,* No. CIV 10-1088-PHX-DKD, 2013 WL 1345509, at *3 (D. Ariz. Mar.

8   29,2013) (defendant's request that particular worker cease providing services to its

9   customers did not evidence ability to fire); *Cox,* 2012 WL 1203726, at *2-3 (that

10  contractor frequently terminated employees based on displeasure expressed by

11  defendant did not make defendant joint employer).  Because Home Depot did not have

12  the power to hire or fire plaintiff, it cannot be considered his employer.  *See Rios v.*

13  *Airborne Express Inc.,* No. C-05-2092 VRW, 2006 WL 2067847, at *3 (N.D. Cal. July

14  24, 2006) (summary judgment granted where no evidence that defendant had control

15  over hiring or firing).

16          2.    Home Depot did not supervise plaintiff or control his schedule or
                 other employment conditions.

17          Home Depot did not supervise, train, evaluate or discipline plaintiff.  SUF ¶ 28-

18  31, 35, 37; 17; 24; 25.  While plaintiff necessarily interacted with certain Home Depot

19  workers who coordinate deliveries, that interaction consisted of providing plaintiff with

20  delivery information and paperwork (detailing customer name, address, contact

21  information, merchandise to be delivered, and forms for the customer to sign to verify

22  the delivery) and/or passing on requests or delivery instructions from Home Depot

23  customers.  Burnett Decl. ¶ 16.  Home Depot employees did not have the authority to

24  direct or manage plaintiff's work.  SUF ¶ 28.  If Home Depot or a customer had a

25  complaint or issue with a 3PD driver, those matters were raised with 3PD management,

26  not the driver.  SUF ¶ 38.  Plaintiff was trained by 3PD, not by Home Depot.[4]  SUF ¶17;

27

28  ────────────────
    [4] The limited instruction provided by Home Depot on where to park and pick up
    paperwork and merchandise falls far short of showing an employment relationship.  *See*

1   *see Rios,* 2006 WL 2067847, at *3 (summary judgment granted where alleged joint

2   employer did not train or discipline workers).

3          Further, Home Depot did not monitor or evaluate plaintiff's performance.  SUF

4   ¶¶ 31, 42, 24.  Customer satisfaction with 3PD delivery services is measured through

5   "Voice of the Customer" ("VOC") surveys, conducted by a third party for Home Depot.

6   SUF ¶ 41.  Home Depot reviews overall VOC scores for 3PD, and does not review

7   scores for individual drivers.  SUF ¶ 42.  VOC scores for individual drivers are provided

8   to 3PD to use as it deems appropriate.  Burnett Decl. ¶17.

9          Nor did Home Depot control plaintiff's work schedule.  Home Depot requires

10  that 3PD drivers be available six days a week (60 hours total) beginning at a specified

11  time each day (dictated in part by local ordinances).  SUF ¶ 30; *see also* Burnett Decl. ¶

12  14.  But it is up to 3PD to have one or more drivers available to provide deliveries for

13  the required days and hours.  SUF ¶¶ 29, 30; *see also* Burnett Decl. ¶ 14.  The

14  determination of how many and which drivers to assign, and which days or hours the

15  driver(s) covered, is worked out between 3PD and the drivers.  SUF ¶ 30.

16         The order in which deliveries were made was determined by customers, 3PD,

17  and/or plaintiff, not Home Depot.  SUF ¶¶ 33, 35, 36.  The customer indicates a

18  preferred date and a morning or afternoon delivery preference, if any.  SUF ¶ 33.  The

19  order of deliveries is then determined by 3PD and/or the driver within the preferred

20  window.  SUF ¶ 35.  Beyond communicating customer requests (e.g., requesting first

21  delivery of the day), Home Depot did not have the authority to change the delivery

22  schedule determined by 3PD and/or plaintiff, or to direct plaintiff's daily work.  SUF ¶¶

23  35, 37.  In sum, Home Depot did not exercise the kind of supervision and control

24  necessary for a finding of joint employment.  *Zhao v. Bebe Stores, Inc.,* 247 F.Supp.2d

25  1154, 1160 (C.D. Cal. 2003) (no joint employment where contractor's supervisors were

26  primarily responsible for daily management of workers).

27  _____

28  *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090 (10th Cir. 1991) (defendant that
    provided training materials and conducted frequent inspections of franchisee's
    employees was not joint employer).

1      Plaintiff performed services through BDT, a subcontractor of 3PD, and a *sub-*

2   *subcontractor* of Home Depot, and thus was too far removed from Home Depot for a

3   joint employment relationship to exist.  SUF ¶¶ 6, 9, 10, 12.  In *Gonzales v. Sterling*

4   *Builders, Inc.,* No. 08-CV-943-BR*,* 2010 WL 1875620, at *4-5 (D. Or. May 6, 2010),

5   the district court rejected a similar claim, holding that a general contractor was not the

6   joint employer of framers hired by a sub-subcontractor.  The general contractor's

7   employee visited the work site every two or three days, showed the plaintiffs work

8   plans, discussed changes to the plans, gave direction to the plaintiffs, and set the

9   beginning and end dates of the projects.  *Id.*  The court ruled that these facts did not

10  establish that the general contractor supervised or controlled the plaintiffs' working

11  conditions, "particularly when, as here, the general contractor hired a subcontractor who

12  hired a second subcontractor, who, in turn, hired Plaintiffs."  *Id.* at *5.

13     Plaintiff's assertion that Home Depot exercised control because Home Depot

14  delivery coordinators communicated customer requests and/or delivery direction or told

15  him which deliveries were priorities, is unavailing.  Scheduling based on customer

16  preferences is insufficient to create an employment relationship.  *See Artis v. Asberry*,

17  No. G–10–3232012, WL 5031196, at *5 (S.D. Tex. Oct. 16, 2012) (dictating pick up

18  times for customer deliveries insufficient to show joint employment relationship);

19  *Moreau v. Air France*, 356 F.3d 942, 950 & n.5 (9th Cir. 2004) (setting schedule for

20  contractor's employees insufficient to show joint employment).

21     Nor is it of any import that plaintiff sometimes received calls from Home Depot

22  regarding the status of deliveries or that Home Depot received computer updates on the

23  status of plaintiff's deliveries.  The obvious purpose of such communication is to ensure

24  that Home Depot could respond to customer inquiries regarding deliveries, not to

25  supervise plaintiff's work.[5]  Burnett Decl. ¶ 15.

26

27  _____

    [5] Plaintiff testified that, on rare occasions, he performed non-delivery services for Home
28  Depot, such as helping to build a display at the county fair.  Plaintiff admitted this
    occurred rarely, and that he had the discretion to refuse such additional tasks. Montoya
    Tr. at 36:5-12;  33:12-17.

DEFENDANT HOME DEPOT U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT

1    The Eleventh Circuit affirmed summary judgment for the alleged joint employer

2    on strikingly similar facts in *Layton v. DHL Express (USA), Inc*.  The issue was whether

3    DHL, a shipping and logistics company that contracted with Sky Express for delivery

4    services, exercised sufficient control over the working conditions of the Sky Express

5    drivers so as to be a joint employer.  686 F.3d at 1173.  Plaintiff argued that DHL

6    exercised supervisory control because DHL employees informed drivers of daily start

7    times, observed and criticized driver loading techniques at DHL warehouses, regularly

8    inspected driver vehicles and uniforms to ensure that they conformed to DHL standards,

9    and sent messages to drivers throughout the day as they were making deliveries

10   regarding customer complaints and requests for re-deliveries.  *Id.* at 1179.  Indeed, DHL

11   exercised far greater control over the couriers than is present here, yet the court held that

12   such evidence was insufficient to support a joint employer relationship.  *Id.*  The court

13   emphasized that the couriers spent their days "basically unsupervised" while on the road

14   making deliveries.  *Id.*  Plaintiff's allegation that Home Depot monitored his work by

15   tracking his deliveries through GPS software was expressly rejected by the Eleventh

16   Circuit.  *See id.*  (defendant's receipt of data regarding location of drivers and packages

17   did not evidence "supervision").

18   Like the couriers in *Layton,* plaintiff spent the majority of his workday alone and

19   unsupervised.  He admitted that he had discretion to determine which routes he would

20   take and how to perform his deliveries.  SUF ¶ 36.  Moreover, to the extent that Home

21   Depot communicated with plaintiff to relay customer preferences, such communications

22   are insufficient to show joint employment.  *See id.*; *Artis* 2012 WL 5031196, at *5

23   (supervision regarding quality and time of delivery are insufficient to support joint

24   employment); *Adams,* 2013 WL 1345509, at *4 (directing where to place bags and other

25   instructions did not show control for purposes of joint employment; rather, it constitutes

26   "appropriate supervision of an outsourcing contractor"); *Cox,* 2012 WL 1203726, at *3,

27   *6 (defendant that sent emails to plaintiff throughout workday requesting work updates

28   and ordered plaintiff to perform certain tasks was not joint employer); *see also Diaz v.*

*U.S. Century Bank,* No. 12-21224-CIV, 2013 WL 2046548, at *6-7 (S.D. Fla. May 14, 2013) (requiring plaintiff to be on premises during certain hours and instructions regarding job duties insufficient to demonstrate joint employment).

Nor does the fact that Home Depot required plaintiff to wear an identification badge provide evidence of "control" over plaintiff.  The badge indicated that plaintiff was an "authorized contractor driver," not a Home Depot employee.  SUF ¶ 43.  Such badging requirements do not establish joint employment.  *See Layton,* 686 F.3d at 1173-74 (requiring drivers to place defendant's logo on uniforms and vehicles did not create employment relationship); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 673 (D. Md. 2000).

### 3.   Home Depot did not decide the rate or method of plaintiff's pay.

Home Depot had no role in setting or paying plaintiff's compensation or benefits, and did not pay payroll taxes or issue tax forms for him.  SUF ¶¶ 18, 19, 22.  Home Depot paid 3PD for deliveries performed by plaintiff and other 3PD drivers in accordance with the terms of the 3PD Contract.  SUF ¶ 20.  3PD paid BDT for deliveries performed by plaintiff and other BDT contractor(s).  SUF ¶ 21.  After paying his sub-contractor(s) and other business expenses, plaintiff retained the remaining sums/profit earned by BDT.  Nor did Home Depot determine or provide bonuses or benefits for plaintiff, monitor the hours he worked, or provide workers' compensation insurance for him.  SUF ¶ 18, 19, 23, 31.  Because it did not control these critical terms of employment, Home Depot was not plaintiff's employer.  *See Moreau,* 356 F.3d at 949-50 (summary judgment for alleged joint employer that did not determine rate or method of pay for workers).

### 4.   Home Depot did not maintain personnel records for plaintiff.

Finally, Home Depot does not maintain personnel records for plaintiff or other 3PD drivers, a fact that further negates plaintiff's joint employment claim.  SUF ¶ 54; *see Adams,* 2013 WL 1345509, at *4 (no joint employment where defendant maintained records of number of jobs performed, but no personnel records).  In sum, none of the

13

1    four primary factors under the economic reality test are present here, and Home Depot

2    cannot be considered plaintiff's employer.

3            5.    The additional factors considered under the economic reality test
                   do not support a finding of joint employment.

4

5            In addition to the four factors discussed above, courts consider other factors in

6    deciding whether a joint employment relationship exists, including: (1) whether the

7    premises and equipment of the alleged joint employer are used for the work; (2) whether

8    the service is an integral part of the alleged employer's business; (3) the degree of

9    permanence of the working relationship; and (4) whether the service provider that

10   employs or engages the workers is an independent and substantial going concern that is

11   not completely dependent on the alleged joint employer.  *Torres-Lopez*, 111 F.3d at 639-

12   40; *Zhao*, 247 F. Supp. 2d at 1159-60.[6]  Determining whether an entity qualifies as an

13   employer does not depend on isolated facts, but requires an examination of the

14   "circumstances of the whole activity."  *Bonnette*, 704 F.2d at 1470 (quoting *Rutherford*

15   *Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)); *see Adams,* 2013 WL 1345509, at

16   *1, *5.  Here, consideration of these additional factors also negates plaintiff's claim that

17   he was employed by Home Depot.

18           While plaintiff picked up merchandise from Home Depot stores, he performed

19   his deliveries in a truck that was leased by Big Dog Trucking, not on the premises of

20   Home Depot, and using a trailer and forklift that was sub-leased by 3PD to BDT, and a

21   handheld device and uniform that also were not provided by Home Depot.  SUF ¶¶ 48,

22   46, 47, 44; Burnett Decl. ¶ 20; s*ee Morrison v. Magic Carpet Aviation,* 383 F.3d 1253,

23   1255 (11th Cir. 2004) (no joint employment where pilots spent majority of time in

24   planes); *Moreau*, 356 F.3d at 951 (no joint employment where alleged joint employer

25   provided minimal equipment).  Further, plaintiff had no guarantee of a continued or

26   "permanent" role performing deliveries for Home Depot.  *See* Montoya Tr. 197:10-

27   _____

28   [6] Some of the other factors listed in *Torres-Lopez* and other cases – e.g., "whether the
     work was a specialty job on the production line" (111 F.3d at 640) – are obviously
     inapplicable here.

1    198:22 & Ex. 1, § 20.

2         Finally, the delivery services provided by 3PD constitute only a small fraction

3    (less than one percent) of the many services and products offered by Home Depot.  SUF

4    ¶ 55.  The written agreement between 3PD and Home Depot, including the rates paid

5    for deliveries, is the product of arm's-length negotiations.  SUF ¶ 2; *see Moreau*, 356

6    F.3d at 951; *Zhao*, 247 F. Supp. 2d at 1159-61 (no joint employment where garment

7    manufacturer negotiated pricing and turnaround times with alleged joint employer).  It

8    is undisputed that 3PD is an independent business with customers besides Home Depot,

9    its own offices, employees, management, and assets, and is not completely dependent

10   on Home Depot.  SUF ¶¶ 3, 4, 5.

11        C.      All of Plaintiff's Claims Against Home Depot Necessarily Fail.

12        Plaintiff's first cause of action seeks wages and overtime pay under the FLSA.

13   The FLSA requires "employers" to pay minimum wages and overtime compensation to

14   employees who are not exempt from the provisions of the Act.  29 U.S.C. § 207(a)(1)

15   (2012); 29 U.S.C. § 213(a) (2012); *see Nevada Employees' Ass'n v. Bryan,* 916 F.2d

16   1384, 1387 (9th Cir. 1990).  Plaintiff's second, third and fifth counts allege that Home

17   Depot failed to pay all wages due and made unlawful deductions from plaintiff's wages

18   in violation of Arizona Revised Statutes §§ 23-362 - 23-364.  *See* Complaint (DE 33), at

19   17-20.  All of these provisions apply only to "employers."  Since plaintiff cannot show

20   that Home Depot was his employer, he cannot pursue his FLSA or Arizona state law

21   claims against Home Depot.  Nor can plaintiff maintain his fourth cause of action for

22   unjust enrichment – absent an employment relationship, Home Depot had no duty to

23   pay any wages to plaintiff.  *See Osuna v. Wal-Mart Stores, Inc.,* No. C20014319, 2004

24   WL 3255430, at *5-6 (Ariz. Super. Ct. Dec. 23, 2004) (rejecting unjust enrichment

25   claim where no expectation or promise of payment).

26   IV.   CONCLUSION

27        As the foregoing discussion demonstrates, the undisputed facts conclusively

28   demonstrate that Home Depot was not plaintiff's employer.  His claims against Home

Depot are fatally flawed, and summary judgment should be granted in favor of Home

15

1   Depot.

2                                          Respectfully submitted,

3   Dated:  January 10, 2014              **AKIN GUMP STRAUSS HAUER &**
                                          **FELD LLP**
4

5                                         By <u>s/ Donna M. Mezias</u>
                                              Donna M. Mezias
6                                             580 California Street, Suite 1500
                                              San Francisco, CA  94104
7                                             ***Attorneys for defendants HOME DEPOT***
                                              ***U.S.A., INC. and HOME DEPOT, INC.***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HOME DEPOT U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT

1

**CERTIFICATE OF SERVICE**

2

3

4

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 580 California Street, Suite 1500, San Francisco, California 94104.  On January 10, 2014, I served the foregoing document(s) described as:

5

DEFENDANT HOME DEPOT U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT,

6

on the interested party(ies) below, using the following means:

7

8

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the reference case caption and number**

9

10

11

12

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

13

14

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on January 10, 2014 at San Francisco, California.

15

16

*s/Jeremias V. Cordero*
Jeremias V. Cordero

17

18

19

20

21

22

23

24

25

26

27

28